UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM EL-AHEIDAB,<br><br>    Plaintiff,<br><br>    v.<br><br>CITIBANK (SOUTH DAKOTA), N.A.,<br><br>    Defendant.<br>_____/ | No. C-11-5359 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 5)** |

Plaintiff Adam El-Aheidab filed suit against Citibank in California Superior Court, alleging causes of action for negligence and "statutory violations" including Cal. Civ. Code § 1785.25 and Cal. Bus. & Prof. Code § 17200. Plaintiff alleges that Defendant wrongfully reported an outstanding loan balance owed – though no balance was in fact owed – to credit reporting agencies, which ruined Plaintiff's credit and prevented him from purchasing a home at favorable terms. On November 4, 2011, Defendant removed the action to federal court based on diversity jurisdiction.

Defendant now moves to dismiss Plaintiff's complaint on the grounds of defective service of process under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5), and failure to state a claim upon which relief may be granted under Rule 12(b)(6). No opposition has been filed, although Plaintiff did attempt to file an amended complaint, which this Court struck on January 18, 2012 for failure to seek leave of Court. Docket No. 9.

Pursuant to Civil Local Rule 7-1(b), the Court has determined that the matters are appropriate for resolution without oral argument, and has vacated the hearing. Docket No. 7. The Court hereby enters the following order.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the complaint, Plaintiff alleges as follows. Mr. El-Aheidab took out a student loan from Defendant in 1993 to finance his education. Compl., Docket No. 1, Ex. A, ¶ 5. Plaintiff paid every monthly invoice and was never late with a payment. *Id.* Before the fall of 2006, Plaintiff and Defendant had never had a dispute over his loan. *Id.*

In September 2006, Plaintiff and his wife successfully placed an offer on a home and went into escrow. *Id.* ¶ 6. At the time escrow was opened, Plaintiff's FICO credit score was 775. *Id.* Due to a (later admitted) error of Defendant, however, Plaintiff's loan was recalculated and it appeared that Plaintiff had past-due balances dating back 270 months. *Id.* He received an invoice in November 2006 requesting payment of this erroneously-calculated balance. *Id.* As a result of this clerical error, Plaintiff's FICO score fell from 775 to 525. *Id.* Plaintiff's loan broker informed him the same month that due to his now bad credit, he would not qualify for the home loan he and his wife sought. *Id.*

Plaintiff contacted Defendant to inform it of the error and request a correction. *Id.* ¶ 7. Defendant failed to correct the problem and its agent told Plaintiff it was "his problem." *Id.* Because of Defendant's conduct, Plaintiff alleges his name had to be removed from the loan application with his wife, and that as a result they obtained less favorable terms on their loan.

Based on the above facts, Plaintiff filed suit on October 10, 2008 in state court. Notice of Removal, Docket No. 1, ¶ 1. He alleged causes of action for negligence and "statutory violations," including Cal. Civ. Code § 1785.25 and Cal. Bus. & Prof. Code § 17200. Compl. ¶¶ 10-18.

Plaintiff attempted to serve Defendant eight separate times on October 6, 2011. *Id.* ¶ 3. On November 4, 2011, Defendant removed to this Court, asserting diversity jurisdiction. *Id.* ¶¶ 4-6. Defendant now moves to dismiss Plaintiff's complaint on the basis of improper service and failure to state a claim. Docket No. 5.

///
////
///
///

## II. DISCUSSION

A. Motion to Dismiss - 12(b)(4) & (5)

    1. Legal Standard

Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) permit a defendant to challenge the form of summons and the method of service attempted by plaintiff, respectively. The two rules serve distinct purposes, though they are sometimes confused:

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a [R]ule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or lack of delivery of the summons and complaint.

5A Wright & Miller, Fed. Prac. and Proc. Civ. § 1353 (3d ed. 2011) (citing, *e.g.*, *Imperial v. City and County of San Francisco*, No. 08-05644 CW, 2010 WL 1572760, *1 (N.D. Cal. 2010); *Lay v. Friedman*, No. C 03-4408 RMW, 2008 WL 2744406 (N.D. Cal. 2008)) (additional citations omitted).

In this case, the sufficiency of service of process is evaluated under state law because Plaintiff attempted to serve Defendant prior to removal from state court. *See Lee v. City of Beaumont*, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue . . . ."), *overruled on other grounds*, *Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087, 1091 (9th Cir. 2008). "Substantial compliance" with Rule 4 is required in order to uphold service of process, even when a Defendant has received actual notice. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982); *Collagen Nutraceuticals, Inc. v. Neocell Corp.*, No. 09-CV-2188-DMS(WVG), 2010 WL 3719101, at *1 (S.D. Cal. Sept. 20, 2010).

    2. Defects in the Form of the Summons - Rule 12(b)(4)

Defendant first argues that the form of the summonses issued by Plaintiff in his numerous attempts to serve Citibank personally and by mail were defective. Namely, Defendant contends that the summonses were each improper because they were addressed to persons at Citibank (South Dakota), N.A., rather than Citibank, National Association. *See* Mot. at 3-4. Citibank (South

3

Dakota), N.A. ceased existence on July 1, 2011 when it merged into Citibank, National Association. *See* Mot. at 3; RJN, Ex. I.[1]

"Dismissals for defects in the form of summons are generally disfavored. Such defects are considered 'technical' and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice." *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052-53 (N.D. Cal. 2001) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994); *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."); *McKinney v. Law Office of James Duncan*, No. CV 09-2605 NJV, 2010 WL 668027, at *2 (N.D. Cal. Feb. 19, 2010) ("The court will not dismiss the complaint for improper process if the defendant has received sufficient notice of the complaint and the defendant does not demonstrate actual prejudice."). Here, Plaintiff's failure to correctly name Defendant has caused no prejudice as Defendant received notice of the complaint, and thus does not warrant dismissal. However, Plaintiff shall, in filing his amended complaint, substitute Citibank, National Association as the proper Defendant. *See Nutrasource*, 140 F. Supp. 2d at 1053 (ordering same). Plaintiff shall serve an amended summons on Defendant's attorney. *McKinney*, 2010 WL 668027, at *2.

3. <u>Defects in the Service of Process - Rule 12(b)(5)</u>

Defendant next challenges the service of process under Rule 12(b)(5). The proofs of service indicate that Plaintiff attempted to personally serve a cashier and branch manager of Citibank. Plaintiff also attempted to serve Citibank via certified mail six times, by addressing the following unnamed individuals: Controller, Other Head of the Corporation, Assistant Treasurer, General Manager, Person Authorized by the Corporation to receive Service of Process, and President. *See* Mot. at 4; RJN, Exs. C-H. Defendant argues that each of these methods was improper.

Section 416.10 of the California Code of Civil Procedure allows for personal service on a general manager or cashier of a corporation. Cal. Code Civ. P. § 416.10. Plaintiff's proofs of service relating to the two personal service attempts cite to § 416.10, indicating that this was the

---

[1] Defendant's Request for Judicial Notice is **GRANTED**. Fed. R. Evid. 201(b).

provision under which Plaintiff attempted to effect service. *See* RJN, Exs. A-B. Defendant argues that it is not a corporation, but rather it is a national association. Therefore, it contends that § 416.10 does not apply. However, the Judicial Council comment to § 416.10 explicitly references "[s]ervice on a corporation *or unincorporated association*," indicating that the term corporation in this context may be more broad than Defendant contends. Section 416.10(c) also specifically references banks, indicating that "[i]f the corporation is a bank, [service may be effected] to a cashier or assistant cashier." This provision has been applied to banks that are "associations" as well as those that are "corporations." *See Emma Court LP v. United American Bank*, No. C 09-03625 JSW, 2009 WL 4456387, at * 2-3 (N.D. Cal. Nov. 30, 2009) (evaluating service on banks denominated "California banking association[s]" under § 416.10); *Jimena v. UBS AG Bank, Inc.*, No. 1:07-CV-00367 OWW TAG, 2007 WL 1687045, at *4 (E.D. Cal. June 8, 2007) (evaluating service on a bank corporation under § 416.10).[2] Accordingly, the Court uses § 416.10 to evaluate Plaintiff's attempted service.

Defendant cites *Jimena* for the proposition that personal service on a branch manager does not satisfy § 416.10's provision allowing for service on a "general manager." *Jimena*, 2007 WL 1687045 at *4 (E.D. Cal. June 8, 2007) ("[A] local branch manager of one of hundreds of branch offices is not a general manager [under § 416.10]."). However, neither *Jimena* nor Defendant addresses the provision of § 416.10 allowing for personal service on a bank's cashier, whom Plaintiff also apparently served. *See* RJN, Ex. A (noting personal service on "Britani Sumpter (cashier)"). Defendant raises no question as to the validity of personal service on a cashier, and Plaintiff has complied with § 416.10(c).

---

[2] Moreover, even if Plaintiff may have checked the wrong box on the proof of service, § 416.40 provides for service on unincorporated associations in substantially the same manner as § 416.10. There is some reason to doubt that the section regarding service on "unincorporated associations" is meant to apply to a defendant such as Citibank, however. The Code defines an unincorporated association as "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not." Cal. Corp. Code § 18035(a). Such a definition seems far removed from a large business organization such as Citibank. It has been used to sue groups such as street gangs. *See People ex rel. Totten v. Colonia Chiques*, 156 Cal. App. 4th 31 (2007). Given § 416.10's explicit reference to banks and the lack of any authority holding that a banking association does not fall under § 416.10's provisions, the Court chooses to apply 416.10 in the instant case.

Moreover, even if Plaintiff's personal service attempts were improper, he also served Defendant by mail. Section 415.40 governs service on persons out of state and provides, in relevant part, that "A summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." As Defendant acknowledges, Plaintiff attempted service via certified mail, return receipt requested on persons holding numerous job titles with Defendant, including "Controller," "Other Head of the Corporation," "Assistant Treasurer," "General Manager," "Person Authorized by the Corporation to receive Service of Process," and "President." Mot. at 3-4 (quoting RJN Exs. C-H). Addressing unknown persons by their titles, rather than their names, is sufficient. *See Dill v. Berquist Constr. Co., Inc.*, 24 Cal. App. 4th 1426, 1438 n.11 (1994) ("Had Dill addressed the envelope containing the summons to one of the persons to be served, the service by mail would have been effective. If the names of those officers are unknown to a plaintiff, we see no problem in addressing them solely by their titles. It was Dill's failure to do either that resulted in the invalidity of his attempted service."). Although Defendant argues that the names were incorrect because service was addressed to these persons at Citibank (South Dakota), N.A., rather than Citibank, National Association, as discussed above, this argument lacks merit.

Finally, Defendant contends that the proofs of service filed in conjunction with Plaintiff's attempted mail service do not comply with § 417.20, which requires Plaintiff to "include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence." Defendant argues that Plaintiff has not substantially complied with this provision because he did not include a return receipt. However, as both the Rule's text and the Judicial Council Comment to § 417.20 make clear, there are alternatives to providing a return receipt. For example, the Judicial Council Comment cites to *Aero Associates, Inc. v. La Metropolitana*, 183 F. Supp. 357 (S.D.N.Y. 1960) as providing a way of complying with this provision. *See id.* at 359 (accepting notice from post office advising "plaintiff's attorneys that there was delivery made of the said registered mail to defendants" as sufficient proof of delivery). In the instant case, while Plaintiff does not provide a return receipt, he does provide the confirmation numbers for each delivery on the proofs of service. *See* RJN Exs. C-H. Those confirmation

1  numbers indicate that delivery was effected at 10:43 a.m. on October 10, 2011. The Court is
2  satisfied that actual delivery has occurred.[3]

3  Accordingly, through Plaintiff's numerous attempts at service, including in person on a
4  cashier and by mail to various officials within Citibank, the Court finds that Plaintiff substantially
5  complied with the requirements for service of process. *See Dill*, 24 Cal. App. 4th at 1436 ("In
6  deciding whether service was valid, the statutory provisions regarding service of process 'should be
7  liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has
8  been received by the defendant.'") (quoting *Pasadena Medi-Center Associates v. Superior Court*, 9
9  Cal. 3d 773, 778 (1973)). Defendant's motion to dismiss for insufficient process and insufficient
10 service of process is **DENIED**.

11 B.  Motion to Dismiss - 12(b)(6)

12     1.  Legal Standard

13 Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the
14 failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to
15 dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks*
16 *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court
17 must take all allegations of material fact as true and construe them in the light most favorable to the
18 nonmoving party, although "conclusory allegations of law and unwarranted inferences are
19 insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.
20 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough
21 facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when
22 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
23 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*
24 *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

---

[3] Indeed, the Court notes that the postal service's website indicates that each of Plaintiff's mailings were in fact delivered. *See* U.S. Postal Service, Track & Confirm, available at https://tools.usps.com/go/TrackConfirmAction (last visited Feb. 6, 2012). The Court takes judicial notice thereof.

a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

### 2. Failure to State a Claim

Defendant argues that Plaintiff has failed to state a claim for two reasons. First, Defendant contends that all of Plaintiff's claims are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a). Second, Defendant argues that Plaintiff has failed to state a claim for "statutory violations."

#### a. Preemption

Defendant argues that all of Plaintiff's claims are preempted by the Fair Credit Reporting Act. Section 1681s-2(a) of the Act prohibits a person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." § 1681s-2(a)(1)(A). A person who regularly reports information to consumer reporting agencies is also required to give notice to those agencies of any incorrect or incomplete information, as well as notice of any information that is disputed by the consumer. §§ 1681s-2(a)(2), (3). There is no private right of action for violations of § 1681s-2(a). *See* § 1681s-2(d); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies."). However, there is a private right of action for negligent or willful noncompliance with § 1681s-2(b), which requires "that a furnisher conduct a reasonable investigation of a consumer dispute" and "requires a creditor, upon receiving notice of [a] dispute, to both report the results of the investigation *and*, if the investigation finds that the information is incomplete or inaccurate, report those results to the [credit reporting agencies]." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009) (emphasis in original) (quoting § 1681s-2(b)(1)).

Section 1681t(b) of the Act also contains an express preemption provision. It provides, in relevant part, that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." Section 1681t(b)(1)(F). This preemption provision excepts only one statute relevant here, section

8

1785.25(a) of the California Civil Code,[4] which the Court addresses below. *See* § 1681t(b)(1)(F)(ii). Defendant contends that the Act's preemption provision covers Plaintiff's claim for negligence and violations of Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1785.25.

### (1) Statutory Claims

With respect to the § 17200 claim, every district court to consider the question has held that such a claim is preempted at least insofar as it is predicated on violations of the FCRA or other statutory claims that are also preempted. *See Banga v. Allstate Ins. Co.*, No. CIV S-08-1518 LKK EFB PS, 2010 WL 1267841, at *5 (E.D. Cal. Mar. 31, 2010) ("The Ninth Circuit has implied that the FCRA preempts plaintiff's UCL claim, and district courts have uniformly found claims of this type to be preempted . . . . Accordingly, the court concludes that plaintiff's UCL claim is preempted insofar as it is predicated on violations of 15 U.S.C. §§ 1681s-2(a) and (b)."); *Wang v. Asset Acceptance, LLC*, 681 F.Supp.2d 1143, 1150 (N.D. Cal. 2010) (Wang's UCL claims are preempted); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1143-44 (N.D. Cal. 2005) (dismissing § 17200 claim as preempted by the FCRA due to Congress' intent to preclude state law claims against furnishers of information, and instead to subject them solely to the FCRA); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005) (ruling that the FCRA provision preempted all state law claims, including UCL). *See also Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 105 (2d Cir. 2009) (finding unfair competition claim preempted under another subsection of § 1681t(b)(1)). In addition, while the Ninth Circuit has not squarely ruled on UCL claims in particular, it has considered the FCRA's statutory scheme and held that claims arising under other state statutes are preempted unless the FCRA expressly states otherwise. *See Carvalho v. Equifax Information Services*, LLC, 629 F.3d 876, 888 (9th Cir. 2010) (holding that claim under California Civil Code § 1785.25(f) was preempted by the FCRA because it was "not expressly saved from preemption," as opposed to § 1785.25(a), which was expressly saved).

---

[4] Section 1785.25(a) provides that "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

However, to the extent that Plaintiff attempts to raise a § 17200 claim based on violations of § 1785.25(a), the Ninth Circuit's decision in *Gorman* clarifies that the FCRA's preemption provision "distinguished the imposition of additional legal duties, which are preempted, and the provision of additional remedies or enforcement mechanisms that are not." *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2011 WL 635272, at *15 (N.D. Feb. 11, 2011) (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1171 (9th Cir. 2009)). Statutes which impose legal duties are preempted; statutes which merely provide procedural remedies are not. In *Gorman*, the Ninth Circuit found that a plaintiff could raise a claim under Cal. Civ. Code § 1785.25(a) because the FCRA expressly exempted that section from preemption, even though the FCRA did not also expressly exempt the subsection granting litigants a private right of action to enforce § 1785.25(a). The court found that "these sections [providing a private right of action] merely provide a vehicle for private parties to enforce other sections, which *do* impose requirements and prohibitions." *Gorman*, 584 F.3d at 1171 (emphasis in original). Thus, because the FCRA expressly exempted § 1785.25(a) from preemption, litigants were free to pursue a private right of action under that statute. *Id*.

Similarly, to the extent Plaintiff bases his § 17200 claim solely on violations of § 1785.25(a), such a claim does not impose any additional substantive duties on [Defendant] and is merely an additional procedural vehicle for enforcing section 1725.25(a). *Bottoni*, 2011 WL 635272 at *15 (holding that § 17200 claim based on § 1785.25(a) was not preempted by FCRA).

However, Defendant argues that it is not clear whether Plaintiff intended to allege a claim under 1785.25(a) rather than, for example, 1785.25(c), which requires furnishers to notify credit agencies of disputed debts. Some of Plaintiff's allegations appear to be covered by this preempted provision. *See, e.g.*, Compl. ¶ 8 (discussing Plaintiff's efforts to inform Defendant of its error and to correct the mistake). However, other allegations appear more suited to a 1785.25(a) claim. *See, e.g.*, *id.* ¶ 7 (describing Defendant's initial wrongful reporting of information to credit agencies).

Accordingly, Plaintiff's claim under § 1785.25 is **DISMISSED** with leave to amend. To the extent that Plaintiff can allege a claim under § 1785.25(a), as opposed to other subsections of 1785.25, he may do so in his amended complaint. *Gorman*, 584 F.3d at 1173.

(2) Common Law Claims

With respect to Plaintiff's negligence claim, there is some dispute among district courts as to whether § 1681t(b)(1)(F) preempts common law causes of action as well as statutory claims, and whether it preempts all claims related to a furnisher's duties or merely those that arise after the furnisher has notice from the consumer of a dispute. *See, e.g.*, *Buraye v. Equifax*, 625 F. Supp. 2d 894, 899 (C.D. Cal. 2008) (describing debate among courts as to whether § 1681t(b)(1)(F) provides for total preemption, statutory preemption, or temporal preemption). The source of this dispute is a second preemption provision that predates § 1681t(b)(1)(F) by almost thirty years. It preempts only common law claims "in the nature of defamation, invasion of privacy, or negligence" against furnishers of information "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title" unless the plaintiff can demonstrate "false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. 1681h(e).[5] It may be argued that § 1681h(e) permits certain common law tort claims while § 1681t(b)(1)(F) preempts both common law and statutory claims. The Ninth Circuit has noted the potential tension between these two provisions, but expressly declined to rule on how they would apply to a common law claim that directly raised the question. *See Gorman*, 584 F.3d at 1165-67. Ultimately, the question is what "laws of any state" means as that term is used in § 1681t(b)(1)(F).

The only circuit courts to have considered the question have adopted the total preemption approach, ruling that § 1681t(b)(1)(F) preempts both state *statutory and common* law causes of action. In *Purcell v. Bank of America*, 659 F.3d 622, 624-25 (7th Cir. 2011), the Seventh Circuit

---

[5] The full provision provides:

> Except as provided in section 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action based in whole or part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

11

found that longstanding Supreme Court precedent under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), holds "that a reference to state 'laws' comprises all sources of legal rules, including judicial opinions"; therefore, § 1681t(b)(1)(F)'s reference to the laws of any State necessarily includes common law claims. *Id*. at 624. The court also found that there was no conflict between the two preemption provisions because "Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies, while § 1681t(b)(1)(F) preempts more of these claims." *Id*. at 625. The court held that to "[r]ead[] the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation." *Id*. Reading the two provisions in this way did not render 1681h(e) superfluous, the court found, because § 1681h(e) would still apply in the face of any exceptions to § 1681t(b)(1)(F)'s preemption provision. *Id.* at 625. The court also rejected the use of the "specific-governs-the-general" canon of statutory construction used by some district courts to conclude that §§ 1681h should prevail over 1681t, finding that each statute was specific in different ways. *Id.* at 626.

Most recently, in *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011), the Second Circuit fully adopted the Seventh Circuit's reasoning, holding that 1681t(b)(1)(F) preempted *all* causes of action not expressly excepted. The court agreed with the Seventh Circuit that there was no conflict between the two preemption provisions because the operative language in § 1681h(e) did not mandate conduct prohibited by the later-enacted § 1681t(b)(1)(F). It merely exempted certain state common law claims from its preemptive reach. *Id*. at 48.

The Court notes that the majority of district courts in this circuit have also adopted the total preemption approach applying § 1681t(b)(1)(F) to state statutes and common law. *See Smith v. Capital One Financial Corp.*, No. C 11–3425 PJH, 2012 WL 259515, at *5 (N.D. Cal. Jan. 27, 2012) (finding negligence claim preempted); *Ali v. Capital One*, No. 1:11-cv-02115-LJO-SKO, 2012 WL 260023, at *5 (E.D. Cal. Jan. 27, 2012) (finding complete preemption of defamation claim despite apparent tension between § 1681h(e) and § 1681t(b)(1)(F)); *Buraye v. Equifax*, 625 F.Supp.2d 894, 899 (C.D. Cal. 2008) (finding total preemption and noting that [t]he majority of district courts in the Ninth Circuit have found that the FCRA totally preempts state law claims, including common law ); *Davis v. Maryland Bank*, No. 00–04191 SBA, 2002 WL 32713429, at *12

(N.D. Cal. June 19, 2002) (concurring with "the majority of district courts[, which] have held that the FCRA preempts *both* state statutory and common law causes of action") (emphasis in original) (collecting cases).[6]

Taking into account the conflicting authority on this question, the Court finds that Plaintiff's negligence claim is preempted. First, the plain language of § 1681t(b)(1)(F) appears to apply to Plaintiff's claim. The "laws of any State" literally encompasses common law. The Supreme Court held in *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) that "the law of the state" encompasses, without distinction, the law "declared by its Legislature in a statute" as well as the law declared "by its highest court in a decision." Following that principle, the Court has repeatedly interpreted similar statutes to encompass both statutory and common law claims. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties."); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 522 (1992) (plurality opinion) ("[C]ommon-law damages actions ... are premised on the existence of a legal duty, and it is difficult to say that such actions do not impose 'requirements or prohibitions.'"). Thus, by its plain terms, the statute preempts Plaintiff's common law negligence claim based on conduct governed by § 1681s-2.

In addition, the Court discerns no logical or policy reason why Congress would enact a comprehensive preemption scheme applicable to state statutes but not to state common law. Under a contrary interpretation, the prescription of § 1681t(b)(1)(F) would easily be circumvented by

---

[6] As noted above, district courts have disagreed with the total preemption approach in one of two ways. First, some have found that § 1681t(b)(1)(F) applies only to statutory claims, while § 1681h(e) applies only to common law claims. *See Weseman v. Wells Fargo Home Mortg., Inc.*, No. CV 06-1338-ST, 2008 WL 542961, at *4 (D. Or. Feb. 28, 2008). This approach has the benefit of ensuring no conflict between the two provisions, but carries the drawback of ignoring the seemingly unambiguous language of § 1681(b)(1)(F). *See Spencer v. National City Mortg.*, --- F.Supp.2d ----, 2011 WL 6396509, at *7 (N.D. Ga. Aug. 8, 2011) (describing pros and cons of statutory approach). Second, some courts have found that § 1681(t(b)(1)(F) applies only to claims arising after a furnisher has notice of disputed information, and § 1681h(e) applies only to claims arising before such notice. *Id.* at *6 (describing temporal approach); *Woltersdorf v. Pentagon Federal Credit Union*, 320 F. Supp. 2d 1222, 1226 (N.D. Ala. 2004) ("[T]he absolute bar of the newer § 1681t(b)(1)(F) applies only after a consumer reporting agency notifies the furnisher of credit information of a consumer dispute.") (emphasis in original). However, this approach ignores the fact that § 1681(t(b)(1)(F) encompasses all duties imposed on furnishers under § 1681s-2, and § 1681s-2 imposes duties on furnishers both before and after they have notice of a dispute. *Spencer*, 2011 WL 6396509 at *6.

13

characterizing a claim as a common law claim rather than a statutory one even where the underlying conduct is identical. *See Purcell*, 659 F.3d at 626 ("[U]sing § 1681h(e) to preserve state-law claims that come within the scope of § 1681s-2 would defeat the 1996 decision that administrative action rather than litigation is the right way to deal with false reports to credit agencies."); *Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1143-44 (N.D. Cal. 2005) (describing "Congress's intent to preclude state law claims against furnishers of information, and instead to subject them solely to the FCRA"); *Davis v. Md. Bank*, No. 00-04191, 2002 WL 32713429, at *13 (N.D. Cal. June 19, 2002) ("[T]he legislative history demonstrates that Congress enacted section 1681t(b)(1)(F) in order to create a uniform scheme governing the disclosure of credit information.").

Furthermore, such a reading of § 1681t(b)(1)(F) is not inconsistent with § 1681h(e). As the Seventh Circuit has noted, reading § 1681t(b)(1)(F) to preempt all statutory and common law causes of action against furnishers based on conduct governed by § 1681s-2 does not, as some courts contend, render § 1681h(e) superfluous. *See Purcell*, 659 F.3d at 625. Section 1681h(e) applies to a range of conduct covered by the Act that is not specifically preempted by § 1681t(b). Indeed, § 1681t is, first and foremost, an *anti*-preemption provision. *See* § 1681t(a) ("Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State . . . except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."). Section 1681t(b) merely provides certain specific exceptions to that anti-preemption default rule, and preempts certain defined conduct regulated by the Act. One category of conduct preempting state claims is the duties § 1681s-2 imposes on furnishers, duties Plaintiff seeks to enforce via his negligence claim. However, § 1681t(b) leaves other provisions of the Act untouched, and such provisions are still subject to § 1681h(e)'s more limited preemption clause. For example, the Act imposes certain duties on credit reporting agencies and users of credit reports under §§ 1681b, 1681d, 1681e, 1681g, 1681h, 1681k, and 1681*l*, many of which are not covered by the broader preemption provision of § 1681t(b). *See, e.g.*, § 1681t(b)(1)(A) (preempting actions based on conduct regulated under subsections (c) or (e) of

14

§ 1681b, a section that sets forth the permissible purposes of consumer reports, but not preempting actions based on conduct regulated under subsections (a), (b), (f), or (g)); § 1681(b)(3) (preempting actions based on disclosures to consumers required under subsections (c)-(g) of § 1681g, but not preempting actions based on disclosures required under subsection (a)). Thus, provisions not preempted under § 1681t(b) may be preempted under § 1681h(e). The Seventh Circuit so held in *Purcell*, 659 F.3d at 625 ("This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains."). Thus, § 1681h(e) is not superfluous even if § 1681t(b) were construed to preempt both statutory and common law claims. Accordingly, even a broad construction of § 1681t(b) would not create an irreconcilable conflict with § 1681h(e).

Finally, even if preemption under § 1681t(b) did not apply, the negligence claim herein may nonetheless be preempted by § 1681h(e). Plaintiff has not alleged facts to demonstrate "malice or willful intent to injure," as required in order to state a common law claim free from preemption under § 1681h(e). Rather, Plaintiff merely alleges that Defendant was negligent in reporting false information that it should have known was false, and that Defendant willfully failed to correct such information when Plaintiff informed it of the error. *See* Compl. ¶ 8 (alleging that Defendant responded to his phone call informing it of the error by refusing to correct the error and telling him it was "his problem"); *id*. ¶ 16 (characterizing Defendant's refusal to correct the error as "willful"). These allegations are insufficient to establish the "malice or willful intent to injure" required under § 1681h(e). Plaintiff offers no allegations that Defendants had malice towards Plaintiff or a willful intent to injure him, rather than simply failing to help him correct the problem for non-malicious reasons.

Accordingly, Plaintiff's negligence claim is **DISMISSED** with prejudice.

b. <u>Failure to State a Cause of Action for Statutory Violations</u>

Finally, Defendant argues that Plaintiff has failed to state a claim for "statutory violations," because aside from his citation to § 17200 and § 1785.25, Plaintiff fails to explain a basis for his claim or articulate any other statutory claims against Defendant. As discussed above, the § 17200

15

claim is preempted. In addition, while Plaintiff may be able to allege a claim under § 1785.25(a), he has not done so expressly in his current complaint. Finally, the Court notes that, as discussed above, there is a private right of action for negligent or willful noncompliance with 1681s-2(b) of the FCRA. *See Gorman*, 584 F.3d at 1162; *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002). Many of Plaintiff's allegations appear geared toward such a claim but again no express claim under § 1681s-2(b) of the FCRA is alleged. *See* Compl. ¶ 8 (discussing Plaintiff's efforts to inform Defendant of its error and to correct the mistake). To the extent Plaintiff's claim was intended to be bought as undifferentiated "statutory violations" alleged in the complaint, so stated Plaintiff's allegations are insufficient to state a claim. Therefore, the Court will dismiss this claim but grant Plaintiff leave to amend to clarify the precise statutory bases for this claim.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for insufficient process and insufficient service of process, and **GRANTS** Defendant's motion to dismiss for failure to state a claim. The dismissal is with prejudice as to Plaintiff's negligence claim, § 17200 claim, and any claim based on § 1785.25(b)-(g), but is without prejudice to asserting other claims, including a claim based on § 1785.25(a) or other statutory provisions (including § 1681s-2(b) of the FCRA, or a § 17200 claim based solely on violation of § 1785.25(a)) not preempted by the FCRA.

Plaintiff is instructed to file any amended complaint within 30 days of the date of this order. Plaintiff is also directed to substitute Citibank, National Association as the proper Defendant and serve an amended summons on Defendant's attorney.

This order disposes of Docket No. 5.

IT IS SO ORDERED.

Dated: February 15, 2012

_____
EDWARD M. CHEN
United States District Judge

16